Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EUGENE HORWITZ, On Behalf of Himself and All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| IXYS CORPORATION, NATHAN ZOMMER, UZI SASSON, SAMUEL KORY, KENNETH D. WONG, JAMES M. THORBURN, S. JOON LEE, DONALD L. FEUCHT, and TIMOTHY A. RICHARDSON, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Eugene Horwitz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of IXYS Corporation ("IXYS" or the "Company") against IXYS and the members of IXYS' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of their attempt to sell the Company to Littelfuse, Inc. ("Parent") and Iron Merger Co., Inc., ("Merger Sub," and together with Parent, "Littelfuse") (the "Proposed Transaction").

2.      On August 28, 2017, the Company issued a press release announcing that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Littelfuse.  Under the terms of the Merger Agreement, each IXYS stockholder will be entitled to elect to receive, per IXYS share, either $23.00 in cash or 0.1265 of a share of Littelfuse common stock, subject to proration (the "Merger Consideration").  The Proposed Transaction is valued at approximately $750 million.

3.      On October 26, 2017, Parent filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC.  The Registration Statement, which recommends that IXYS stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the background process leading up to the Proposed Transaction; (ii) the valuation analyses prepared by IXYS' financial advisor Needham & Company, LLC ("Needham") in connection with the rendering of its fairness opinion; and (iii) potential conflicts of interest faced by IXYS insiders.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as IXYS stockholders need such information in order to make a fully-informed vote or appraisal decision in connection with the Proposed Transaction.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.     In short, the Proposed Transaction is designed to unlawfully divest IXYS' public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders.  To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the stockholder vote unless and until such problems are remedied.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   IXYS is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of IXYS.

9.     Defendant IXYS is a Delaware corporation, with its principal executive offices

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

located at 1590 Buckeye Drive, Milpitas, California 95035.  IXYS' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "IXYS."

10.   Defendant Nathan Zommer ("Zommer") is the Company's founder and has served as a director of IXYS since its inception in 1983.  Currently, Zommer serves as Chairman of the Board and Co-Chief Executive Officer ("CEO") of the Company.

11.   Defendant Uzi Sasson ("Sasson") has served as the Company's Co-CEO since August 2016, the Company's President since December 2009, and the Company's Chief Financial Officer ("CFO") and Secretary since November 2004.  Defendant Sasson has been a director of IXYS since June 2015, and previously served as a director from August to November 2004.

12.   Defendant Samuel Kory ("Kory") has been a director of the Company since 1999.

13.   Defendant Kenneth D. Wong ("Wong") has been a director of IXYS since 2011, and previously served as a director from 2004 to 2007.

14.   Defendant James M. Thorburn ("Thorburn") has been a director of IXYS since 2007.

15.   Defendant S. Joon Lee ("Lee") has been a director of IXYS since 2000.

16.   Defendant Donald L. Feucht ("Feucht") has been a director of IXYS since 2000.

17.   Defendant Timothy A. Richardson ("Richardson") has been a director of IXYS since 2007.

18.   Defendants Zommer, Sasson, Kory, Wong, Thorburn, Lee, Feucht, and Richardson are collectively referred to herein as "Individual Defendants" and/or the "Board."

## OTHER RELEVANT ENTITIES

19.   Parent is a Delaware corporation and the world leader in circuit protection with growing global platforms in power control and sensing.  Parent is a party to the Merger Agreement.

20.   Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own IXYS common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

23.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of August 24, 2017, there were 32,610,410 shares of Company common stock outstanding.   All members of the Class may be identified from records maintained by IXYS or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, inter alia:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

25.     Plaintiff will fairly and adequately protect the interests of the Class, and have no

- 5 -

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

28.     IXYS is an integrated semiconductor company that designs, develops, manufactures, and markets semiconductor products worldwide.  The Company develops and markets technology-driven products to improve energy conversion efficiency, generate clean energy, advance automation and provide solutions for the transportation, medical, and telecommunication industries.  IXYS has developed power semiconductors, solid state relays, high voltage integrated circuits, and microcontrollers that are used in conserving energy and in reducing the world's dependence on fossil fuels.  The Company was founded in 1983 and is headquartered in Milpitas, California.

29.     On June 2, 2017, the Company issued a press release announcing its financial results for the quarter and fiscal year ended March 31, 2017.  For the quarter, IXYS' net revenues were $83.4 million, a 4.5% increase compared to net revenues for the fiscal quarter ended March 31, 2016.  Gross profit increased to $29.2 million, compared to $24.1 million for the fiscal quarter ended March 31, 2016.  Net income was $9.3 million, a 50.0% increase compared to the fiscal quarter ended March 31, 2016.  For the year, net revenues were $322.1 million, a 1.5% increase compared to $317.2 million in the fiscal year ended March 31, 2016.  Gross profit increased to

$105.6 million, compared to $99.8 million for the fiscal year ended March 31, 2016.  Net income was $21.3 million, a 44.8% increase compared to the fiscal year ended March 31, 2016.  Defendant Sasson commented on the Company's progress in its financial results, stating:

> Efforts to increase gross margins are bearing fruit as evidenced by three consecutive quarters of growth in margins. Higher net revenues reflect strengthening demand for our products. In particular, our power product sales have been boosted by demand in the industrial market. Our backlog looks healthy for the coming quarters.

> * * *

> We are pleased with IXYS' financial metrics for the March 2017 quarter and will work diligently to continue this positive trend in the quarters ahead. Much will be dependent on global market growth and the resumption of customer buying trends. Therefore, we expect revenues in the June 2017 quarter to increase 2-3% from the March 2017 quarter.

Defendant Zommer also remarked on the quarter's and fiscal year's financial results, noting:

> We implemented strategic directives that mirrored global market dynamics, which resulted in improved product focus, an increased rate of innovation and better financial results. . . . We have taken actions in recent years to strengthen IXYS financially, bolstering our cash position for opportunistic, organic and acquisitive growth.  We have also concentrated on efforts to increase our stockholders equity.

30.     The Company's financial success continued as IXYS issued a press release on August 2, 2017 announcing its positive financial results for the first fiscal quarter ended June 30, 2017.  For the quarter, the Company reported net revenues of $83.5 million, a 3.6% increase from $80.6 million in the first fiscal quarter of 2016, and the third consecutive quarter that net revenues increased.  Net income also increased to $5.5 million, compared to $3.0 million in the first fiscal quarter of 2016.  Commenting on the quarter's favorable financial results, defendant Zommer stated:

> Increasing net revenues are attributable to improved global demand for our power semiconductor and IC product lines. The demand from customers is ramping up, as evidenced by the backlog of $114 million, the highest level IXYS has seen since March 2012. Backlog at March 31, 2017 was $98.9 million. . . . We intend to capitalize on the uptick in power semiconductor requirements, adding to our capacity and equipment to meet current and prospective customer needs. Organic growth also focused on R&D and product commercialization, as we introduced new products that

- 7 -

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

address transportation, wireless, IoT, power grid management and industrial applications.

Defendant Sasson also commented on the quarter's financial results, noting:

Atypical of our summer seasonal slowdown, customer demand remains robust. We are seeing healthy sales throughout the industrial, commercial and communication infrastructure markets worldwide. Customers' forecasts are equally promising, as we believe that many have placed orders based on optimistic business projections. . . . Therefore, we expect revenues in the September 2017 quarter to increase 4-6% from the June 2017 quarter.

**The Sale Process**

31.     During the period leading up to February 2017, IXYS and the Board received inquiries from third parties expressing interest in a potential strategic combination, the details of which are undisclosed.

32.     On February 21, 2017, Littelfuse Vice President and General Manager—Automotive Electronics Business Eyal Altman ("Altman") contacted defendant Sasson to express Littelfuse's interest in exploring a strategic combination with IXYS.

33.     On May 5, 2017, Littelfuse's Vice President of Business Development, Dave Coughlan ("Coughlan"), notified defendant Sasson that Littelfuse was considering a proposal to acquire all outstanding shares of IXYS for a price of $21.35 per share.  Then, on May 12, 2017, Coughlan notified defendant Sasson that Littelfuse was considering a revised proposal to acquire all outstanding shares of IXYS for a price of $21.75 per share.  The parties subsequently engaged in discussions regarding their respective businesses.

34.     On June 15, 2017, the Board met and reviewed Littelfuse's revised proposal and IXYS' potential strategic alternatives.

35.     On June 16, 2017, defendants Zommer and Sasson met with the CEO and CFO of a U.S.-based publicly traded semiconductor company referred to in the Registration Statement as

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Company A.   At the meeting, Company A's CEO and CFO indicated that Company A was considering a proposal to acquire IXYS.

36.     On June 28, 2017, Littelfuse submitted a non-binding proposal to acquire all of the outstanding shares of IXYS for a price of $22.35 per share, including a mix of stock and cash consideration.

37.     Also on June 28, 2017, the Board authorized Needham to conduct outreach to other potential acquirers.   IXYS and Needham subsequently reached out to or were contacted by 13 parties regarding their potential interest in the Company.

38.     On July 5, 2017, a U.S.-based publicly traded semiconductor company referred to in the Registration Statement as Company B indicated that it was considering a proposal for a strategic transaction with IXYS.  Company B ultimately did not submit a proposal.

39.     On July 7, 2017, Company A informed defendant Sasson that it was considering a proposal for the acquisition of all of the outstanding shares of IXYS for a price in a preliminary range of $23.00–25.00 per share.  That same day, defendant Sasson informed Littelfuse's Coughlan that a purchase price of $22.35 per share was not likely to be supported by the Board and that IXYS had been approached by another party which had indicated a purchase price of around $25.00 per share.

40.     At a July 19, 2017 Board meeting, the Board directed Needham to seek final written proposals from any interested acquirers by July 26, 2017.

41.     On July 25, 2017, Littelfuse submitted a proposal to acquire all of the outstanding shares of IXYS for a price of $23.00 per share, including a mix of stock and cash consideration that provided for 45% of IXYS shares to be converted into the stock consideration.  Littelfuse's proposal was contingent on the parties entering into an exclusivity agreement.

42.     On July 26, 2017, Company A submitted a proposal to acquire all of the outstanding shares of IXYS for a price in the range of $20.00–21.00 per share, including a mix of stock and cash consideration.   Company A's proposal was also contingent on the parties entering into an exclusivity agreement

43.     The Board met later that day and, following discussion, authorized IXYS management to enter into a 21-day exclusivity agreement with Littelfuse and to commence negotiations with Littelfuse on the basis of a proposed purchase price of $23.00 per share.

44.     On July 29, 2017, IXYS entered into an exclusivity agreement with Littelfuse.  Over the next several weeks, the parties conducted due diligence and negotiated the terms of the merger agreement and related documents.

45.     On August 25, 2017, Needham rendered its fairness opinion and the Board approved the Merger Agreement.  Later that day, the parties executed the Merger Agreement.

**The Proposed Transaction**

46.     On August 28, 2017, IXYS and Littelfuse issued a joint press release announcing entry into the Merger Agreement, which stated in relevant part:

**CHICAGO, IL AND MILPITAS, CA, August 28, 2017 —** Littelfuse, Inc. (NASDAQ:LFUS) and IXYS Corporation (NASDAQ:IXYS) today announced that they have entered into a definitive agreement under which Littelfuse will acquire all of the outstanding shares of IXYS in a cash and stock transaction. The transaction represents an equity value of approximately $750 million and enterprise value of $655 million. Under the terms of the agreement, each IXYS stockholder will be entitled to elect to receive, per IXYS share, either $23.00 in cash or 0.1265 of a share of Littelfuse common stock, subject to proration. In total, 50% of IXYS stock will be converted into the cash election option and 50% into the stock election option.

IXYS is a global pioneer in the power semiconductor and integrated circuit markets with a focus on medium to high voltage power control semiconductors across the industrial, communications, consumer and medical markets. IXYS has a broad customer base, serving more than 3,500 customers through its direct salesforce and global distribution partners. IXYS reported revenues of $322 million in its fiscal 2017 with an adjusted EBITDA margin of approximately 13.5%.

The combined company is expected to have annual revenues of approximately $1.5 billion, with the following compelling strategic and financial benefits:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Broader technology platform and capability to expand growth into industrial and electronics markets

- Increased long-term penetration of power control portfolio in automotive markets, expanding global content per vehicle

- Heightened engineering expertise and intellectual property around high voltage and silicon carbide semiconductor technologies

- Increased presence in the semiconductor industry, adding to our scale and volume

- Strong relationships and complementary overlap in major global electronics distribution partnerships enabling cross-selling

- Immediately accretive to adjusted EPS and free cash flow post transaction close

- Expect to generate more than $30 million in annualized cost savings; additional future value created from revenue synergies and tax rate reduction

"As the largest acquisition in our 90-year history, this is an exciting milestone for Littelfuse," said Dave Heinzmann, President and Chief Executive Officer, Littelfuse. "IXYS' extensive power semiconductor portfolio and technology expertise fit squarely within our strategy to accelerate our growth within power control and industrial OEM markets. The combination of Littelfuse and IXYS unites complementary capabilities, cultures and relationships."

"IXYS will operate as the cornerstone of the combined companies' power semiconductor business," said Dr. Nathan Zommer, Chairman and Chief Executive Officer of IXYS. "Both Littelfuse and IXYS have long histories of innovation and customer-focused product development, and together, we will embrace the entrepreneurial spirit that has contributed to IXYS' success in the power semiconductor and integrated circuits market."

"The combination of IXYS and Littelfuse creates a stronger player in the power semiconductor industry, with the ability to leverage our collective resources and portfolio to create increased value for our customers," added Uzi Sasson, President and Chief Executive Officer of IXYS. "We believe that being a part of a world-class organization like Littelfuse will provide a bright future for IXYS and the talented people at our respective companies."

**Transaction Highlights**
The transaction is expected to be immediately accretive to Littelfuse's adjusted earnings per share and free cash flow in the first full year post transaction close, excluding any acquisition and integration related costs. Littelfuse expects to achieve more than $30 million of annualized cost savings within the first two years after

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

closing the transaction. Longer term, the combination is also expected to create significant revenue synergy opportunities given the companies' complementary offerings, as well as benefits from future tax rate reduction.

In conjunction with the definitive agreement, Dr. Nathan Zommer, IXYS founder and currently the company's largest stockholder with approximately 21% ownership, has entered into a voting and support agreement. Subject to the agreement's terms and conditions, he has agreed to vote his shares in favor of the transaction. After close of the transaction, Dr. Zommer is expected to join Littelfuse's Board of Directors, subject to the board's governance and approval process. His technical skills and extensive experience across the semiconductor industry will benefit the combined company with its integration efforts, innovation roadmap and revenue expansion.

The transaction is expected to close in the first calendar quarter of 2018 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by IXYS stockholders. Littelfuse expects to finance the cash portion of the transaction consideration through a combination of existing cash and additional debt.

**Insiders' Interests in the Proposed Transaction**

47.     Littelfuse and IXYS insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of IXYS.

48.     Notably, defendant Zommer has secured a position for himself with the combined company following consummation of the Proposed Transaction as a director of the combined company.

49.     Moreover, pursuant to the terms of their amended and restated employment agreements, upon consummation of the Proposed Transaction, all outstanding stock options held by defendants Zommer and Sasson will automatically vest and become fully exercisable.  Similarly, any outstanding stock options held by IXYS' non-employee directors will automatically vest and become exercisable.  Notably, defendant Sasson will receive **_over $1.8 million_** in connection with the vesting of his stock options.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

50.      Further, if they are terminated in connection with the Proposed Transaction, defendants Zommer and Sasson are set to receive substantial cash payments in the form of golden parachute compensation, as set forth in the following table:

| Executive Officers | Cash(1) ($) | Equity(2) ($) | Perquisites/ Benefits(3) ($) | Total(4) ($) |
|---|---|---|---|---|
| Nathan Zommer | 2,127,778 | 84,113 | 29,547 | 2,241,438 |
| Uzi Sasson | 2,114,784 | 1,820,175 | 51,825 | 3,986,784 |

**The Registration Statement Contains Material Misstatements or Omissions**

51.      The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to IXYS' stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

52.      Specifically, as set forth below, the Registration Statements fails to provide Company stockholders with material information or provides them with materially misleading information regarding: (i) the background process leading up to the Proposed Transaction; (ii) the valuation analyses prepared by IXYS' financial advisor Needham in connection with the rendering of its fairness opinion; and (iii) potential conflicts of interest faced by IXYS insiders.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

53.      The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

54.      The Registration Statement provides that prior to February 2017, IXYS received inquiries from third parties expressing interest in a potential strategic combination.  Although the Registration Statement states they were "of a preliminary nature and did not lead to a bona fide proposal with a purchase price or that was otherwise sufficiently compelling for the IXYS board of directors" (Registration Statement at 50), the Registration Statement fails to disclose any information regarding the nature of the inquires, whether the Company entered into nondisclosure

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

agreements with these entities to facilitate the discussion of various potential strategic opportunities, and whether the interested parties were included in Needham's outreach.

55.     Accordingly, without further information regarding the nature of these inquiries and whether any of the entities entered into confidentiality agreements with IXYS, the Company's stockholders are being misled into assuming that these other industry participants, which were actively interested in acquiring the Company, could make an offer to acquire the Company if they so choose—when they may be contractually precluded from doing so.  Additionally, without further information, stockholders are being misled as to their understanding as to what price offers were considered not to be "sufficiently compelling" by the Board.

56.     The omission of this information renders the Registration Statement false and/or materially misleading including, *inter alia*, the "Background of the Merger" section of the Registration Statement.

***Material Omissions Concerning Needham's Financial Analyses***

57.     The Registration Statement describes Needham's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Needham's fairness opinion and the underlying analyses omits key inputs and assumptions underlying these analyses.  Without this information, as described below, IXYS public stockholders are unable to determine what weight, if any, to place on Needham's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to IXYS stockholders.

58.     With respect to Needham's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the Company's projected 2020 adjusted EBITDA;[1] (ii) the specific

---

[1] Although the Registration Statement discloses IXYS' EBITDA for the fiscal year ending March 31, 2020 (Registration Statement at 63), according to the Registration Statement, Needham utilized management's

inputs and assumptions underlying the discount rate range of 11.5% to 13.5% selected by Needham in its analysis; (iii) Needham's basis for selecting terminal multiples of 7.0x to 10.0x to apply to IXYS' 2020 adjusted EBITDA; (iv) the actual terminal enterprise values calculated and utilized in the analysis; (v) the value of IXYS' cash and debt utilized in the analysis; (vi) the implied perpetuity growth rates corresponding to the assumed terminal multiples; and (vii) the number of IXYS' estimated fully-diluted shares outstanding at the end of fiscal year ending March 31, 2020.

59.     With respect to Needham's *Present Value of Illustrative Future Stock Prices Analysis*, the Registration Statement fails to disclose: (i) the Company's projected 2018, 2019, and 2020 adjusted EBITDA; (ii) Needham's basis for selecting multiples of 7.0x to 10.0x to apply to IXYS' projected 2018, 2019, and 2020 adjusted EBITDA; (iii) the value of IXYS' projected cash and debt at the end of the respective projected fiscal years 2018, 2019, and 2020; (iv) the specific inputs and assumptions underlying the discount rate range of 13.1% to 15.1% selected by Needham in its analysis; and (v) the projected fully diluted shares outstanding used in the analysis.

60.     With respect to Needham's *Littelfuse Selected Companies Analysis*, the Registration Statement fails to identify the comparable companies Needham observed in its analysis, as well as the individual multiples for each selected company analyzed by Needham.

61.     With respect to Needham's *IXYS Selected Companies Analysis*, the Registration Statement fails to include the individual multiples for each of the selected public companies analyzed by Needham, as well as the financial performance metrics for each selected company observed by Needham in the analysis.

62.     Similarly, with respect to Needham's *Selected Transactions Analysis*, the Registration Statement fails to include the individual multiples for each of the selected transactions

---

estimate of its fiscal year 2020 **adjusted** EBITDA, in its *Discounted Cash Flow Analysis*.  *See* Registration Statement at 70.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

analyzed by Needham, as well as any benchmarking analyses Needham performed for IXYS in relation to the target companies.

63.     With respect to Needham's *Pro Forma Transaction Analysis*, the Registration Statement fails to disclose: (i) the estimated financial results of Littelfuse used in the analysis; (ii) whether there are any synergies for the Proposed Transaction beyond 2018, and, if so, the value(s) thereof; (iii) the actual value of the accretion to estimated adjusted EPS of Littelfuse for calendar year 2018; and (iv) whether there is any accretion beyond calendar year 2018, and, if so, the value(s) thereof.

64.     With respect to Needham's *Premiums Paid Analysis*, the Registration Statement fails to identify the 14 merger and acquisition transactions reviewed by Needham, as well as the individual premiums of the consideration offered in each transaction.

65.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts.

66.     The omission of this information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Certain Financial Projections Utilized by the IXYS Board of Directors and IXYS' Financial Advisor"; and (ii) "Opinion of IXYS' Financial Advisor."

***Material Omissions Concerning Insiders' Potential Conflicts of Interest***

67.     The Registration Statement omits material information concerning the potential conflicts of interest faced by IXYS management and the Board.

68.     As detailed in the Registration Statement, defendants Zommer and Sasson entered into amended employment agreements with IXYS on August 25, 2017.  These agreements, which

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

were executed the same day that IXYS entered into the Merger Agreement, provide for lucrative salaries, bonuses, and change in control payments upon the termination of the officers.  However, the Registration Statement fails to disclose details regarding the timing and substance of the negotiations pertaining to these amended employment agreements, including who first proposed the amended agreements, when they were proposed, and who participated in those discussions.  This information is necessary so that IXYS stockholders can determine whether defendants Zommer and Sasson, both of whom played an outsized role in negotiating and facilitating the Proposed Transaction, had personal interests that prevented them from acting solely in the best interests of the Company's stockholders.

69.    Additionally, the Registration Statement notes that defendant Zommer will join the Littelfuse board of directors following the completion of the merger.  However, the Registration Statement fails to disclose the timing and nature of communications regarding future employment and/or directorship of IXYS officers and directors, including who participated in all such communications and whether any of Littelfuse's prior proposals or indications of interest mentioned future management employment and/or directorship.

70.    Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

71.    The omission of this information renders the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "IXYS' Reasons for the

Merger; Recommendation of IXYS Board of Directors"; and (iii) "Interests of IXYS' Directors and Executive Officers in the Merger."

72.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of
Section 14(a) of the Exchange Act And SEC Rule 14a-9**

73.     Plaintiff repeats all previous allegations as if set forth in full.

74.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

75.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   The Registration Statement misrepresented and/or omitted material facts, including material information about the background leading up to the Proposed Transaction, the financial analyses performed by the Company's financial advisor, and potential conflicts of interest faced by IXYS insiders.  The

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

76.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

77.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

78.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT III

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

79.     Plaintiff repeats all previous allegations as if set forth in full.

80.     The Individual Defendants acted as controlling persons of IXYS within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as officers or directors of IXYS and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

81.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

82.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

83.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

84.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

85.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of IXYS, and against defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 7, 2017

WEISSLAW LLP
Joel E. Elkins

By:

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:  310/209-2348
             -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff and
the Proposed Class*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS